IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| KIMBERLY I. MOORE,<br><br>Plaintiff,<br><br>vs.<br><br>CARLOYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | CV-15-93-H-JTJ<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT** |

**I. Synopsis**

Plaintiff, Kimberly I. Moore, seeks disability benefits under the Social Security Act. After two agency hearings in which the Commissioner denied benefits, Moore filed for review before an Administrative Law Judge ("ALJ"). The

1

ALJ determined that, despite her severe impairments, Moore is capable of performing work that exists in significant numbers in the national economy and, therefore, is not entitled to benefits. There is substantial evidence to support the ALJ's decision, and the decision is free from legal error. Therefore, the ALJ's decision is affirmed.

## II. Jurisdiction

The district court has jurisdiction under 42 U.S.C. § 405(g). This case is assigned to the undersigned by consent of the parties. (Docs. 7 and 8.) Venue in the Great Falls Division of the District of Montana is proper because Ms. Moore resides in Lewis and Clark County, Montana. 28 U.S.C. §1391(e); Local Rule 1.2(c)(3).

## III. Standards

### A. Court's role

Review in this case is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than

a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

The district court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

### B. Disability criteria

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

To determine whether a claimant is disabled for purposes of the Social

3

Security Act, an Administrative Law Judge (ALJ) follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ automatically finds the claimant disabled. *Id*. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. 20

C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## IV. Background

### A. Procedural History

Moore applied for disability benefits on June 2, 2011, alleging that she had been disabled since January 1, 2009. (Tr. 151.) The Social Security Administration ("SSA") denied her claim on June 26, 2012, and again denied her claim upon reconsideration on November 21, 2012. (Tr. 11.)

Moore requested a hearing with an ALJ on December 13, 2012. (Tr. 11.) The hearing was conducted on February 25, 2014. (Tr. 11.) Moore, present with counsel, testified in front of the ALJ at the hearing. (Tr. 40-101.) The ALJ found Moore had not been under a disability within the meaning of the SSA's regulations and did not qualify for benefits. (Tr. 11-26.) On August 25, 2015, the Appeals Council denied review of the ALJ decision, making the ALJ's decision final. (Tr. 1-2.)

Moore timely filed this action on October 26, 2015, seeking judicial review of the denial of her claim. (Doc. 2). Both parties have fully briefed the claim.

(Docs. 18 and 19.)

### B. ALJ's determination

At step one, the ALJ determined that Moore has not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 14.) At step two, the ALJ found that Moore has the following severe impairments: obesity, degenerative disc disease, bipolar disorder, posttraumatic stress disorder, and borderline personality disorder. (Tr. 13.) At step three, the ALJ determined that Moore's impairments do not establish a disability under the Listing of Impairments. (Tr. 13, 15.) At step four, the ALJ found that Moore is unable to perform past relevant work. (Tr. 24.)

At step five, the ALJ found that Moore has the residual functional capacity to perform other work that exists in significant numbers in the national economy. Namely, the ALJ used the vocational expert testimony to determine that Moore would be able to perform the requirements of a representative work such as marker, routing clerk, lab sample carrier, cleaner/housekeeper, escort vehicle driver, inspector, or production worker. (Tr at 25.)

### C. Moore's position

Moore asks the Court to reverse the Commissioner's decision and to remand with instructions for payment of benefits. (Doc. 18 at 30.)

Moore argues that the Commissioner's decision is not supported by substantial evidence. Moore asserts that the ALJ erred by:

1. giving insufficient weight to the medical expert's opinion regarding her impairments and whether the impairments met or equaled a listing;

2. giving insufficient weight to the treating physician's opinion that she could not work full time or the treating therapists' opinions that she could not work at all;

3. finding her subjective complaints of pain and other symptoms not credible without giving clear and convincing reasons supported by the evidence;

4. finding her subjective complaints about her inability to perform daily activities not credible, despite the record indicating that her activities were very limited and thus far less than meeting requirements for sustained work activity;

5. giving insufficient weight to the statements of lay witnesses;

6. finding her residual functional capacity to be higher than the record supports.

(Doc. 18.)

## VI. Analysis

### A. Legal Standards

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." *Mayes v. Massanari*, 276 F.3d 453, 458 (9th Cir. 2001). A court must affirm the findings of fact if they are supported by "substantial evidence" and if the proper legal standard was applied. *Id.* at 459. Whether substantial evidence supports a finding is determined from the record as a whole, with the Court weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *Id.* When the evidence can rationally be interpreted in more than one way, the Court must uphold the Commissioner's decision. *Id.*

#### 1. Lay Witnesses

This Court first addresses Moore's argument that the ALJ erred by not giving lay witness testimony sufficient weight. The ALJ reasonably discredited the testimony of lay witnesses. If the ALJ relies on such "relevant evidence as a reasonable mind might accept as support to the conclusion," it should not be overturned. *Valentine v. Comm'r SSA*, 574 F.3d 685, 689 (9th Cir. 2009). An ALJ must only give germane reasons for discrediting the testimony of lay witnesses. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Testimony given that conflicts with medical evidence is germane and sufficiently discredits lay

8

witnesses. *Id.*

Ms. Moore's aunt testified on behalf of Ms. Moore's claim for benefits. The ALJ held that, besides not being medically trained to make exacting observations pertaining to Moore's alleged disability, the aunt's testimony proved inconsistent with a preponderance of opinions and observations by medical doctors on the record as a whole. (Tr. 23.) Additionally, the ALJ determined that testimony of Moore's aunt, who is also her roommate, cannot be given much weight because she is not a disinterested party. (*Id.*)

Even if the testimony of the lay witness could be interpreted in more than one way, this Court must uphold the Commissioner's position because the testimony of the lay witness and the medical opinions are inconsistent. When lay witnesses and medical testimony give contrary testimony, the ALJ can opt to discredit the lay witness testimony. *Bayliss*, 427 F.3d at 1218. Moreover, in light of this determination, Moore's argument that the ALJ's refusal to consider lay witness testimony that was submitted after the hearing will not be considered. (*See* Doc 18 at 28.)

### 2. Moore's Credibility

Clear and convincing medical evidence supported the ALJ's finding that Ms. Moore's testimony regarding her back problems was not credible. The ALJ's

determination to discredit Moore's testimony about her mental impairments was likewise supported by specific, clear and convincing evidence. The ALJ properly weighed the testimony of the conflicting medical opinions in making his findings.

### a. Physical Symptoms

The ALJ is not required to believe pain testimony and may disregard it if there are no objective medical findings which "could reasonably be expected to cause some pain." *Dodrill v. Shalala*, 12 F.3d 915, 917 (9th Cir. 1993). Here, there was evidence of an impairment, degenerative disk, that could reasonably be expected to cause some pain. The ALJ could not disregard Moore's testimony as to the severity without "clear and convincing" reasons supported by specific findings.[1] *Id*. at 918.

The ALJ did not find credible the claim that the pain was severe enough to render Moore disabled. The ALJ found Moore's allegations of severe impairments caused only "mild restrictions." (Tr. 15.) The ALJ states that Moore's alleged symptoms are not entirely credible for a number of reasons. The issue is whether the ALJ gave clear and convincing reasons supported by specific findings for partial rejection of Moore's testimony that her symptoms were severe enough to

---

[1] If there is evidence of malingering, the Commissioner does not need "clear and convincing" reasons to reject the testimony. *Dodrill*, 12 F.3d at 917 (citing *Fair*, 885 F.2d at 601).

preclude all work.

One reason the ALJ gave for partially discounting Moore's credibility was evidence that Moore exaggerated her limitations. In support of this reason, the ALJ made specific findings, including the following: (1) Moore performs activities of daily living, (Tr. 18); (2) Moore raises her child, a toddler, as the primary caregiver, (Tr. 21); (3) Moore attends parenting classes, drives, and shops in stores. (Tr. 18-19) (These activities are also referenced as evidence inconsistent with Moore's alleged mental impairments.); (4) The medical records do not indicate that the degenerative disc has deteriorated or become problematic enough to cause disabling symptoms or limitations. (Tr. 19.)

The ALJ cites a number of medical records to support the finding that the disc deterioration has not rendered Moore disabled. First, the ALJ notes an MRI from 2009 that showed normal vertebral bodies and a neural arch. The MRI indicated mild dessication, modest annular bulge that slightly touched the thecal sac without compromise, and annular bulge that raised question of annular tear (not unusual in Moore's age group). (Tr. 19) (citing Ex. 3F/1.) More recent x-rays and an MRI do not conflict with the earlier diagnosis. The examinations did not indicate any acute abnormalities or noteworthy degenerative changes. (Tr. 18.) (citing Exs. 29F/1; Ex. 3F/1; Ex. 3F/2; Ex. 29F/46.) Basic assessments of sensation

and reflexes indicated normalcy in upper and lower extremities. (Tr. 18) (citing Exs. 24F/1; 26F/2.)

Additionally, The ALJ gave weight to the opinions of the State Agency medical consultants, Dr. Fernandez and Dr. Schofield. These doctors opined that Moore could perform light work, frequently balance, crouch, kneel, and climb ramps and stairs. (Tr. 20) (citing Exs. 5A/8; 6A/8; 9A/10; 10A/10). The ALJ found that these assessments proved consistent with the objective medical evidence. (Tr. 21.) The ALJ possesses discretion to give little weight to claimant testimony when inconsistent with medical records.

The ALJ supports his decision that Moore's physical impairment did not render her disabled with substantial evidence. The ALJ did not commit legal error in making this determination.

### b. Mental Impairments

The ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements." Social Security Ruling (SSR) 96-7p, *available at* 1996 WL 371486 at

\*4.

The ALJ should first determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995 at 1014. For this determination, the claimant need not produce objective medical evidence of symptoms or severity of the symptoms. *Id.*

The second step requires the ALJ to evaluate the extent to which the severity and intensity of the symptoms would limit the claimant's capacity for work. *See* 20 C.F.R. § 404.1529(c). At step two of the analysis, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering clear and convincing reasons for doing so. *Id.*

In this case, the ALJ discounted Moore's credibility regarding the extent to which her mental impairments limited her capacity for work with clear and convincing reasons. Moore testified that she suffered from depression and mania, with the depression being more significant. (Tr. 31.) Moore also testified that her bipolar medications, Trileptal and Venlafaxine, only help to a certain degree. Moore testified to being hospitalized for a suicide attempt in 2011. She also claimed that her anxiety and bipolar made her antisocial and uncomfortable around people.

Moore testified to doing dishes and laundry on occasion and spending most of her day watching her baby. Moore's testimony indicated that she was able to, on occasion, attend appointments and run errands on her own. Moore testified that trips to Wal-Mart were sometimes cut short because panic attacks induced by social anxiety would cause her to have to sit in the car while her aunt finished the shopping. (Tr. 60.) Moore testified that similar anxiety has caused canceling of appointments with state agencies. (Tr. 67.)

Despite the testimony that might indicate a capacity for some work, Moore testified that work itself was a major cause of her debilitating depression because it disproportionately increased her social anxiety. (Tr. 49.) Moore expressed concern that, specifically, work-related social-anxiety and depression caused disassociation and suicidal ideations that were completely out of her control.

The ALJ found that Moore's subjective complaints proved inconsistent with her history and daily activities. Based on those inconsistencies, the ALJ made a determination that negatively impacted Moore's credibility. The ALJ focused on the fact that Moore was able to twice drive cross country. Moore made one of the trips by herself. (Tr. 19-21.) The ALJ also cited Moore's testimony about her capacity for daily activities as inconsistent with her claims. (Tr. 21.) Additionally, the ALJ cited the record that indicated Moore did much better when taking her medications.

14

The ALJ's use of evidence about Moore's history and the fact that the medical record indicates Moore functions at a higher level when on her medications provides clear and convincing reasons for discrediting her testimony about the severity of her symptoms.

Dr. Atkin, a neuro-psychologist, testified on Moore's behalf and stated that, after having read through the files and examinations, he felt that Moore demonstrated the tendencies to decompensate in a manner that would qualify as work-limiting. (Tr. 102-15.) Dr. Atkin specifically noted that a lack of hospitalizations or prolonged treatment did not discredit a tendency to decompensate. (Tr. 111-12.) Dr. Atkin felt that the living situation with her aunt and having almost all of her daily needs attended to provided the structure and support necessary to abate further decompensation. (Tr. 109-11.) Dr. Atkin stated that even "minimal increase in mental demands or change in the environment would be predicted to cause [Moore] to decompensate." (Tr. 111.) Atkin also pointed to Moore's "running off to Virginia" as a specific example of the impulsive behavior set in motion by a lack of structure and support indicative of this tendency. (Tr. 106 and 112.)

The ALJ gave specific, clear and convincing reasons for giving little weight to the testimony of Dr. Atkin. The ALJ stated that nothing in the record

demonstrated Moore's tendency to decompensate because Moore had no episodes of decompensation during the dates at issue. (Tr. 22.) The ALJ pointed specifically to Moore's twice crossing the country by car, once alone, as evidence that Moore had showed no history of medically classifiable decompensation. (Tr. 16.) Dr. Atkin's testimony also proved inconsistent with the medical opinions of the State Agency psychological examiners.

The ALJ acknowledges the severity of a suicide attempt in August 2011. (Tr. 20.) The ALJ notes, however, that Moore had been off of her medications for a month, which is consistent with medical testimony that Moore functions well when on her medications. Additionally, a suicide attempt does not meet the SSA's definition of decompensation. (Tr. 21.) A fight with an abusive boyfriend caused the episode, and Moore admits that he has made no contact in the over two years since she has lived in Montana. (Tr. 59.)

The ALJ gave little weight to the testimony of Kim Jones, one of Moore's treatment providers. Specifically, the ALJ noted that Ms. Jones was not an "acceptable medical source" under the SSA's regulations. *See* 20 C.F.R. § 404.1513(a); 20 C.F.R. § 404.1531(d)(1). The ALJ thus treated the testimony of Ms. Jones as that of a lay witness, and, as stated above, the ALJ need only provide germane reasons for discounting the testimony of a lay witness. Testimony that

conflicts with medical testimony provides rational reasoning for discrediting a lay witness. In this case, the testimony of Ms. Jones conflicted with the testimony of the State Agency medical consultants.

The ALJ gave more weight to the testimomy of Drs. Bateen and Herman , the State Agency psychological consultants. Their opinions indicated that Moore should be able to complete simple tasks and perform in a work setting. The ALJ points out that these opinions are consistent with Moore's residual functional capacity. (Tr. 21.)

The ALJ has provided specific, clear and convincing evidence as to the decision to discredit Moore's testimony. Additionally, the ALJ possessed the discretion to determine how to weigh medical evaluations concerning the severity of Moore's mental impairments. The ALJ gave clear and convincing reasons for giving more weight to that of the state medical examiners.

### 3. The ALJ's hypothetical limitations provided to the vocational expert were reasonable.

Moore argues that the ALJ erred by relying on a vocational consultant's testimony that did not include all of her limitations. Specifically, Moore argues that the ALJ erred by providing the vocational expert with incorrect hypothetical information, including an incorrect residual functional capacity. Moore alleges the ALJ incorrectly discredited or gave insufficient weight to the following: her own

17

subjective testimony about her limitations; the testimony of Dr. Atkin, who gave consistent testimony that indicated diagnosable decompensation; and the testimony of her treatment provider, Kim Jones, that was consistent with the subjective symptoms of Moore's mental impairments.

The determinations given to the vocational expert for use in assessing the residual functional capacity were based on substantial evidence in the record and were not based on legal error. The ALJ provided the vocational expert with findings derived from the medical testimony provided by the state examiners. Moore's argument that the ALJ provided the vocational expert with a residual functional capacity that was not supported by the record falls short. Thus, the vocational experts determination that work exists in sufficient number in the national economy that Moore could perform was not legal error.

### B. Reversal and Remand

Before the Court may remand a case to the ALJ with instructions to award benefits, the Court must determine whether: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant

disabled on remand. *Burrell*, 775 F.3d at 1141.

Here there would be no benefit in further proceedings because the transcript includes all of the necessary diagnostic information. Further proceedings would serve no useful purpose. However, the plaintiff has not met her burden of proving that the ALJ failed to provide legally sufficient reasons for rejecting evidence. The ALJ acted within his discretion in rejecting Moore's testimony. The ALJ provided a vocational expert with the determined residual functional capacity based on the findings from the entire record.

This Court must affirm the decision of the ALJ when the ALJ relies on such relevant evidence as a reasonable mind might accept as support to the conclusion.

## VII.  CONCLUSION

The Commissioner determined that Moore is not disabled within the meaning of the Social Security Act and, therefore, is not entitled to disability benefits. The ALJ provides specific, clear and convincing evidence to support the decision. This Court finds the ALJ provided substantial evidence for the decision and did not make any legal error.

Therefore, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, (Doc. 18) , is **DENIED**.

2. The Commissioner's final decision is **AFFIRMED**.

3. The Clerk of Court shall enter judgment in favor of **CAROLYN W. COLVIN**.

DATED this 12th day of October 2016.

_____
John Johnston
United States Magistrate Judge